IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HERMAN M.[1]**,

    Plaintiff,

v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

    Defendant.

Case No. 6:20-cv-758-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Mark A. Manning, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Frederick Fripps, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

    Plaintiff Herman M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act).[2] For the following reasons, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

---

[2] Plaintiff originally also applied for disability insurance benefits (DIB) under Title II but withdrew that application, which the administrative law judge (ALJ) formally dismissed in his decision.

PAGE 2 – OPINION AND ORDER

## BACKGROUND

### A. Plaintiff's Application

Plaintiff initially filed applications for DIB and SSI on August 16, 2016, alleging a disability onset date of January 1, 1987. AR 168-81. The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 92-100, 105-14. Plaintiff later amended his alleged onset date to July 11, 2016, and withdrew his application for DIB. AR 195. Plaintiff was born on December 27, 1964, and was 52 years old as of the amended alleged disability onset date. AR 176. In September 2018, Plaintiff appeared for a hearing before an ALJ. AR 28-54. On December 4, 2018, the ALJ denied Plaintiff's claim. AR 12-27. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied in March 2020. AR 1-6. The ALJ's decision then became the final decision of the agency. Plaintiff now seeks judicial review from this Court of that decision.

### A. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the

PAGE 3 – OPINION AND ORDER

        claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

PAGE 4 – OPINION AND ORDER

Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## B. The ALJ's Decision

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 16, 2016. AR 17. At step two, the ALJ found that Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine, diabetes mellitus, psoriasis, asthma, hepatitis C, right foot arthritis, and obesity. AR 18. The ALJ concluded, however, that Plaintiff did not have any severe impairment or combination of impairments. *Id.* The ALJ thus found at step two that Plaintiff was not disabled under the Act from the amended alleged onset date, July 16, 2016, through the date of decision, December 4, 2018. AR 22.

## DISCUSSION

Plaintiff argues that the ALJ erred at step two of the sequential analysis in finding that Plaintiff had not established that he suffered from any severe impairment during the relevant period. Specifically, Plaintiff claims that the ALJ erred by rejecting Plaintiff's subjective symptom testimony and by improperly rejecting the lay witness statement of Shirley Picknell. Plaintiff argues that the rejected evidence should be fully credited as true, and the case should be remanded for an immediate award of benefits.

### A. Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In making his step two finding, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision." AR 19. Plaintiff argues that the ALJ did not provide clear and convincing reasons supported by substantial evidence to reject Plaintiff's subjective symptom testimony and failed to link evidence to testimony that it supposedly undermined. The ALJ discounted Plaintiff's testimony because Plaintiff's symptoms were well-managed when he was compliant with treatment and because Plaintiff's alleged limitations were not supported by the objective medical evidence.

**1. Improvement with Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Plaintiff argues that the ALJ lacked substantial evidence to support discounting Plaintiff's testimony about his diabetes. Plaintiff reported that he had been taking the medications Metformin and Glipizide for his diabetes, that his blood sugars had been extremely high after his

Metformin was discontinued, and that his A1C levels ranged from 6.0 to 13.3 during the relevant period with no consistent improvement. AR 41-44, 307, 284, 526, 513, 494. Plaintiff argues that the ALJ's conclusion that Plaintiff's diabetes was "well-managed" is thus unsupported by substantial evidence. The Commissioner responds that the ALJ properly determined that Plaintiff's diabetes was well-managed, and that the acute episodes were triggered by his temporary failure to comply with treatment. The Court agrees with the Commissioner.

In addressing Plaintiff's diabetes, the ALJ found that Plaintiff's diabetes was consistently well-managed with dietary changes, periodic blood sugar monitoring, and medication. AR 19. The ALJ cited multiple medical records throughout 2017 and 2018 indicating that Plaintiff mostly had been compliant with medications and with a diabetic diet, and that Plaintiff had consistently reported that his symptoms were improved with medication. In noting that Plaintiff was hospitalized in August 2017 with diabetic ketoacidosis, the ALJ highlighted that this occurred following a period of non-medication compliance and cited relevant medical records. *Id.*, citing AR 389 (noting Plaintiff's "considerable improvement" with treatment and that the hospital "[e]mphasized [the] importance of medication compliance"), 399 (noting that Plaintiff "states that he has not been compliant with Metformin for a while now"). By February 2018, Plaintiff's A1C had dropped back to 6 with treatment compliance. AR 494.

Regarding Plaintiff's respiratory impairments, Plaintiff claims that the ALJ improperly discounted Plaintiff's testimony, specifically those portions describing Plaintiff's need for an inhaler and nebulizer for persistent breathing issues, and an instance of hospitalization for acute respiratory distress. The Court disagrees. Plaintiff reported he controlled his respiratory ailments with a nebulizer and inhaler. *See* AR 45-46. The ALJ cited one instance where Plaintiff was treated for acute respiratory failure but noted that that evidence indicated that this period of respiratory failure ceased within less than two days following treatment. AR 19, citing AR 432,

PAGE 9 – OPINION AND ORDER

444. The Commissioner, relevantly, points out that the medical records indicate Plaintiff smoked cigars. AR 432. Further, the ALJ noted that by May 15, 2018, Plaintiff denied symptoms such as wheezing, shortness of breath, or chest pain. AR 19-20, citing AR 474. Finally, as previously noted, the ALJ found that Plaintiff's psoriasis improved dramatically due to treatment with Humira, stabilizing in May, 2018. AR 19. Plaintiff reported vast symptom improvement after beginning Humira during his testimony. AR 39. The ALJ thus properly considered this when determining that Plaintiff's psoriasis was controlled following May 2018.

For all of these impairments, the ALJ linked Plaintiff's symptom testimony to medical evidence showing that Plaintiff's impairments generally were well-controlled with treatment. When there were acute instances of distress, the ALJ explained that those were caused by periods of treatment noncompliance. Thus, the ALJ did not err in discounting Plaintiff's symptom testimony because it improved with treatment. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (affirming the ALJ's assessment of the claimant's subjective symptom testimony, specifically that the claimant "did not consistently comply with his regime, and that his seizures tended to occur when he did not comply" but that when the claimant "takes his medication he is under good control").

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony relating to his psoriasis. At his hearing, Plaintiff testified that the medication Humira had done "a wonderful job" of getting his psoriasis under control, though he still experiences some plaques on his knees, toes, ankles, hands, and elbows. AR 39-40. Plaintiff argues, however, that he previously experienced severe psoriasis, "enough to be on immunomodulators" and that covered "90%" of his body. *See* AR 428, 536. Plaintiff began Humira in May 2018, and claims it had stabilized by June 2018, emphasizing that it took nearly two years from the alleged onset date for Plaintiff's psoriasis to stabilize. AR 536, 545. Plaintiff claims that this directly undermines the ALJ's determination that Plaintiff's psoriasis did not "more than minimally [affect his] ability to perform work-related activities for twelve or more continuous months" during the period before Plaintiff started Humira. AR 19.

The ALJ found that Plaintiff's psoriasis was not a severe impairment because it only minimally affected Plaintiff's ability to work, even before he started Humira. *Id.* As for the relevant period before Plaintiff began treatment with Humira, the ALJ relied on a medical report that indicated Plaintiff's psoriasis, though acute, did not cause any swelling or otherwise limit Plaintiff's ability to work. AR 19, citing 428. Thus, the objective medical evidence did not support Plaintiff's claims that his psoriasis was a severe impairment before treatment with Humira. This is additional evidence that the ALJ could consider in evaluating Plaintiff's subjective testimony.

Additionally, Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony relating to his degenerative disc disease and resulting back pain, specifically Plaintiff's self-

reports indicating that he cannot bend down or lift more than 50 pounds, that he was "not able to do much at all anymore without taking many breaks to control pain and soreness," and that his back pain impaired his ability to lift, squat, bend, stand, reach, walk, kneel, and climb stairs. AR 234, 238-39. The ALJ found that the medical evidence demonstrated that Plaintiff's back pain no more than minimally limited his ability to perform work-related tasks. AR 19. To support that finding, the ALJ cited medical examinations in the record that indicated Plaintiff "consistently exhibited normal strength in his upper and lower extremities bilaterally," and displayed "a normal gait and station" and "normal range of musculoskeletal motion." *Id.* The ALJ also noted that Plaintiff only suffered from back pain "intermittently." *Id.*

Plaintiff testified that his doctor told him he would need to see a specialist to treat his back or obtain pain medication and he declined because he has "just lived with it for so long it doesn't bother me anymore until I—throw it out or it goes out on me, you know, something severe happens, and that's when it bothers me." AR 37. Plaintiff stated that he takes Tylenol for his back pain. *Id.* Plaintiff further stated that after treating his flare-ups with Tylenol his "severe back pain went away," he was "fine again." *Id.* The ALJ's reading of the record evidence that Plaintiff's back pain would not significantly limit his basic work activities is a rational reading of the record. Although Plaintiff's reading of the record may also be rational, when there is more than one rational interpretation of the evidence, the Court upholds the ALJ's interpretation. *See Burch*, 400 F.3d at 679.

Similarly, the ALJ properly evaluated Plaintiff's right foot arthritis. Plaintiff alleged right foot pain. Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony in that regard. The ALJ, however, explicitly linked Plaintiff's testimony to medical records explaining that Plaintiff consistently had a normal gait and normal mobility. AR 20. This evidence undermines

Plaintiff's claims of debilitating foot pain. A person with severe foot problems would be expected to have an affected gait and mobility. Plaintiff's ability to walk and stand normally indicates that his foot pain does not cause debilitating symptoms.

The objective medical evidence is additional evidence the ALJ properly relied on in evaluating much of Plaintiff's symptom testimony, in addition to Plaintiff's improvement with treatment. Thus, the ALJ did not err in considering Plaintiff's testimony.

**B.  Lay Witness Testimony**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must

determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In her lay witness statement, Ms. Picknell opined that Plaintiff was not as strong as he once was, that he required frequent breaks and lots of down time, and experienced limitations when lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, completing tasks, concentration, understanding, following instructions, and using hands. AR 244, 249. The ALJ provided three reasons for assigning little weight to the evidence provided by Ms. Picknell. The ALJ asserted that (1) the opinions are inconsistent with the medical evidence; (2) the opinions are inconsistent with the State Agency medical consultants; and (3) Ms. Picknell is not an acceptable medical source. AR 22.

Plaintiff argues that the ALJ erred in failing to identify germane bases supported by substantial evidence to reject Ms. Picknell's lay witness statement. Specifically, Plaintiff asserts that Ms. Picknell's opinions are not inconsistent with the medical evidence for the same reasons that Plaintiff's testimony is not inconsistent, that the State Agency medical consultants did not base their conclusions on a full review of the record, and that the ALJ may not disregard

Ms. Picknell's statements merely because Ms. Picknell is not a medical source. The Commissioner responds that the reasons given by the ALJ for discounting Ms. Picknell's testimony are germane. Alternatively, the Commissioner argues that the ALJ's reasons for discounting Plaintiff's testimony apply with equal force to the similar lay witness statement, and that any error was thus harmless.

Because the Court upholds the ALJ's evaluation of Plaintiff's symptom testimony, the Court agrees with the Commissioner that any error in evaluating Ms. Picknell's testimony would be harmless. The same reasoning can be extended to Ms. Picknell's opinion. *See Molina*, 674 F.3d at 1117.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff is not disabled.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge